IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WASHINGTON PENN PLASTIC CO., INC., | : | CIVIL ACTION |
| | : | |
| | : | No.: 2:23-cv-1198 |
| Plaintiff, | : | |
| | : | |
| v. | : | *JURY TRIAL DEMANDED* |
| | : | |
| THE PHOENIX INSURANCE COMPANY AND TRAVELERS PROPERTY CASUALTY COMPANY, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, Washington Penn Plastic Co., Inc., files the following Complaint against The Phoenix Insurance Company, and Travelers Property Casualty Company, and in support thereof avers as follows:

### I.  The Parties

1. Plaintiff, Washington Penn Plastic Co., Inc. **("WPP")**, is a Pennsylvania corporation with its principal place of business located at 480 Johnson Road, Washington, Washington County, Pennsylvania 15301.

2. Defendant, The Phoenix Insurance Company **("Phoenix")**, is an insurance company and Connecticut corporation with its principal place of business located at One Tower Square, Hartford, Connecticut 06183.

3. Defendant, Travelers Property Casualty Company, formerly known as The Travelers Indemnity Company of Illinois **("Travelers")**, is an insurance company and Connecticut corporation with its principal place of business located at One Tower Square, Hartford, Connecticut 06183.

1

## II. Jurisdiction and Venue

4. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to this claim occurred in this district.

## III. Facts

6. WPP is a leading provider of polypropylene and polyethylene compounds, founded and headquartered in Washington, Pennsylvania.

7. WPP purchased a Workers Compensation and Employers Liability policy from Phoenix ("EL Policy") covering the policy period of January 1, 2000 through January 1, 2001 at 12:01 a.m. with the Policy No. PVYDN-UB-874K277-3-00. A copy of the policy is attached as Exhibit 1.

8. The EL Policy had a bodily injury by disease policy limit of $100,000 for each employee.

9. Part Two of the EL policy provides coverage for bodily injury by disease and states in relevant part:

**A.   How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.     We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, including damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of an in the course of employment, claimed against you in a capacity other than as employer.

********

**I.     Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

10. WPP also purchased a Commercial Excess Liability Umbrella Insurance Policy ("Umbrella Policy") from Travelers, an affiliate of Phoenix, covering the policy period of January

1, 2000 through January 1, 2001 at 12:01 a.m. with the Policy No. PSM-CUP-875K962-6-TIL-00.

A copy of the policy is attached as Exhibit 2.

    11.    The insuring clause of the Umbrella Policy states as follows:

**1.    INSURING AGREEMENT.**

    a.    We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies.  This insurance applies only to:

    (1)    "Bodily injury" or "property damage":

    (a)    Occurring during the policy period; and

    (b)    Caused by an "occurrence"; and

    (2)    "Personal injury" or "advertising injury" caused by an "offense" committed during the policy period.

    b.    Damages because of "bodily injury" include damages claim by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

    12.    The Umbrella Policy contains an Endorsement that purports to exclude absolutely any claims arising from asbestos exposure, as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – ASBESTOS**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos.  This includes:

4

   a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

   b. Any obligation to share damages with or repay someone else who must pay damages because of such bodily injury or damage.

13. The Umbrella Policy has a $25,000,000 limit.

14. The EL policy is scheduled as underlying the Umbrella Policy.

15. Daniel Rugg was an employee of WPP from 1986 to 2015.

16. On June 24, 2019, Daniel Rugg and his wife Sandra Rugg filed a lawsuit in the Court of Common Pleas of Philadelphia at 2019 No. 06953 (the "Lawsuit") alleging bodily injury (mesothelioma) arising from asbestos exposure while Daniel Rugg was an employee of WPP.

17. WPP reported the claim to all potential carriers. The claim number for the defendants in this matter was FDG 8061.

18. Defendants denied WPP both a defense and indemnity in the Lawsuit. Among other reasons, Defendants invoked section A.1.4 of the EL Policy and asserted that the last date of exposure to asbestos as alleged in the Lawsuit was after the policy's end date. Exhibit 3, Denial Letter.

19. The Lawsuit proceeded to a jury trial from June 27, 2022 through July 14, 2022, and resulted in a $3.8 million verdict.

20. During trial, the plaintiffs in the Lawsuit provided significant evidence that the last date of exposure to asbestos occurred in 2000.

21. The jury made its decision based upon that evidence.

22. After entry of judgment, WPP settled the claim for $3 million in January 2023.

23. In April 2023, WPP demanded indemnity from the Defendants.

24. Defendants refused the demand in May 2023 as supplemented in June 2023.

## IV.  Causes of Action

### First Cause of Action – Breach of Contract

### WPP v. Phoenix

25. The allegations contained in the preceding paragraphs are incorporated by reference as if fully restated herein.

26. A policy of insurance is a contract.

27. Phoenix owed WPP a duty under the EL policy to indemnify WPP up to the limits of its insurance for all losses suffered by WPP in the Lawsuit. This duty includes the duty to indemnify WPP and reimburse WPP for the settlement payment as well as attorneys' fees and expenses it incurred or paid in connection with defending the Lawsuit.

28. Under Part Two of the EL Policy, Phoenix owes a duty to pay all sums WPP must pay as damages because of bodily injury to its employee, Daniel Rugg, as well as the costs of defense.

29. Accordingly, Phoenix is obligated to tender the policy limits of $100,000 to WPP.

30. WPP has performed any and all relevant conditions precedent that it must perform pursuant to the EL Policy to obtain coverage and indemnification by Phoenix or such conditions have been waived by Phoenix.

31. Phoenix has breached its insurance contract with WPP, unreasonably and in bad faith, by failing to indemnify WPP up to the limits of its insurance for the settlement payment made by WPP in addition to its attorneys' fees and expense incurred or paid in connection with the Lawsuit.

32.     Phoenix's breach of its contractual duty has caused WPP to suffer damages in the amount of the $100,000 policy limits.

WHEREFORE, Plaintiff, Washington Penn Plastic Co., Inc., respectfully demands judgment in its favor, and against Defendant, The Phoenix Insurance Company, in the amount of $100,000.00, together with interest, costs and any other relief that this Honorable Court deems just and appropriate.

## Second Cause of Action

## Bad Faith - 42 P.S. § 8371

## WPP v. Phoenix

33.     The allegations contained in the preceding paragraphs are incorporated by reference as if fully restated herein.

34.     At all material times, Phoenix did not have a reasonable basis for denying benefits under the EL Policy.

35.     At all material times, Phoenix knew of or recklessly disregarded its lack of reasonable basis in some or all of the following respects:

    a. By failing to indemnify WPP for its losses incurred in defense and settlement of the Lawsuit;

    b. By attempting to assert Mr. Rugg's date of last exposure to asbestos was outside the period of the EL Policy when Mr. Rugg testified his last exposure occurred in 2000 and the jury credited his testimony;

    c. By attempting to relitigate the results of the Lawsuit after final judgment against WPP;

    d. By refusing to accept the necessary consequences and inferences of the final judgment in the Lawsuit;

    e. By attempting to relitigate the results of the Lawsuit after it had denied WPP a defense;

    f. By asserting late notice as grounds to deny coverage;

    g. By placing its interests ahead of those of WPP;

    h. By failing to act honestly, objectively, intelligently, and in good faith and with due care in evaluating the WPP's claim for indemnity;

    i. By failing to accord WPP's interests the same faithful consideration Phoenix gives its own interests;

    j. By failing to produce its insurance policy on demand; and

    k. By engaging in reckless, wanton, willful, and bad faith behavior as expressly and implicitly set forth in this Complaint.

36. Phoenix violated Pennsylvania's Bad Faith Law, 42 Pa. C.S. § 8371 ("Bad Faith Law") for all of the reasons set forth above.

37. Phoenix's conduct was extreme, outrageous, intentional, reckless and deserving of punishment.

WHEREFORE, Plaintiff, Washington Penn Plastic Co., Inc., respectfully requests judgment against Defendant, The Phoenix Insurance Company, in an amount in excess $75,000 plus punitive damages, attorneys' fees, interest, costs, all remedies afforded by 42 P.S. § 8371, and such other relief as the Court deems appropriate.

### Third Cause of Action – Breach of Contract

### WPP v. Travelers

38. The allegations contained in the preceding paragraphs are incorporated by reference as if fully restated herein.

39. The Umbrella Policy's asbestos exclusion endorsement violates public policy.

40. At the time WPP purchased the Umbrella Policy, it had long been the law that an employee with a latent injury could not bring a common law claim against his employer because the Workers Compensation Act and Occupational Disease Act provided the exclusive remedies for those injuries.

41. However, in *Tooey v. AK Steel Corp.*, 81 A.3d 851 (Pa. 2013), the Supreme Court of Pennsylvania determined for the first time that claims for occupational disease which manifests outside of the 300-week period prescribed by the Workers Compensation Act do not fall within the purview of that Act and thus an employee could file a common law claim against an employer.

42. Under appropriate factual circumstances, Pennsylvania courts will not hesitate to find insurance policy exclusions void for public policy.

43. Prior to *Tooey*, numerous Pennsylvania courts had concluded that the public policy of Pennsylvania supported upholding the exclusivity provisions of the Workers Compensation Act and Occupational Disease Act to preclude employer liability for common law negligence.

44. When WPP purchased insurance in 2000, it had no reasonable expectation of any common law liability for latent disease claims brought by an employee.

45. Mesothelioma claims arising out of asbestos exposure (like that of Daniel Rugg) are precisely the kind of latent disease common law claims that were not viable, and therefore the

asbestos exclusion in the Umbrella Policy would have been consistent with public policy before *Tooey*.

46. After *Tooey*, the asbestos exclusion violates public policy. Employers cannot manage their risk for workplace disease when the alleged date of last exposure to asbestos occurred years or decades before a viable cause of action existed in Pennsylvania.

47. *Tooey* provides a false promise of compensation from employers who may not have the ability to pay nor the ability to insure against the claim.

48. Further, the Umbrella Policy is an occurrence-based policy that is incongruent with the "date of last exposure" trigger in the EL policy.

49. The Umbrella Policy perpetuates a false promise of coverage for employer liability claims arising from exposure to asbestos unless the asbestos exclusion is voided.

50. Travelers owed WPP a duty under the Umbrella Policy to indemnify WPP and reimburse WPP for all losses incurred in the Lawsuit, including the judgment, the settlement payment, and the attorneys' fees and expenses WPP incurred or paid in connection with defending the Lawsuit.

51. As outlined above, the asbestos exclusion is void as to public policy and thus not applicable here.

52. Travelers has breached its obligation of indemnity by failing to reimburse WPP for the full amount of the $3 million post-judgment settlement of the Lawsuit and the counsel fees WPP incurred in defending the Lawsuit.

53. Travelers' breach of its contractual duty has caused WPP to suffer damages in an amount within the policy limits of the Umbrella Policy

54. Further, there exists between the parties an actual justiciable controversy concerning which WPP is entitled to have a declaration of its rights under the Umbrella Policy.

55. WPP is entitled to a declaration that the Asbestos Exclusion of the Umbrella Policy is contrary to public policy and thus should be stricken from the Umbrella Policy.

WHEREFORE, Plaintiff, Washington Penn Plastic Co., Inc., respectfully seeks a judgment against Defendant, Travelers Property Casualty Company, that includes an award of compensatory damages in excess of $75,000, a declaration that the Asbestos Exclusion contained in the Umbrella Policy is void, an order that Travelers must provide coverage under the Umbrella Policy, interest, costs, and such other relief as the Court deems appropriate.

STRASSBURGER McKENNA GUTNICK
& GEFSKY

Date: June 30, 2023    By:    /s/David A. Strassburger
David A. Strassburger
Pa. ID. No. 76027
Danielle L. Dietrich
Pa. ID. No. 200767

Four Gateway Center, Suite 2200
444 Liberty Avenue
Pittsburgh, PA 15222
T - (412) 281-5423
F - (412) 281-8264

*Counsel for Plaintiff*
*Washington Penn Plastic Co., Inc.*