# EXHIBIT 2

# INCOMPLETE POLICY

This notification is affixed to a policy that is missing forms and/or endorsements, including the one(s) listed below, which may have been included in the originally issued policy. After a diligent search of company records available as of this date, we could not locate these forms and/or endorsements.

CG D0 31 10 91 is missing

_____

_____

_____

_____

**No additional insurance is afforded by this copy.**

THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS

_____

**Name of Insuring Company(ies)**

CUP-875K9626                01/01/00 to 01/01/01          05/05/2023

_____          _____          _____

**Policy Number(s)**          **Policy Period(s)**          **Date**

Kenneth Kupec, Second Vice President
BI Document Management

**RECORDS RETENTION**

One Tower Square, Hartford, Connecticut 06183


TravelersPropertyCasualty
A Member of TravelersGroup

**POLICY DECLARATIONS**
**COMMERCIAL EXCESS LIABILITY**
**(UMBRELLA) INSURANCE POLICY**

**POLICY NO.:** PSM-CUP-875K962-6-TIL-00
**ISSUE DATE:** 01-05-00

**INSURING COMPANY:** THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS

**1. NAMED INSURED AND MAILING ADDRESS:**
WASHINGTON PENN PLASTICS CO.
AND AUDIA LAND COMPANY
2080 N. MAIN STREET

WASHINGTON          PA 15301

**2. THE NAMED INSURED IS A:**
[X] CORPORATION  [ ] SOLE PROPRIETOR  [ ] PARTNERSHIP OR JOINT VENTURE  [ ] OTHER

**3. POLICY PERIOD:** From 01-01-00  to  01-01-01 12:01 A.M. Standard Time at your mailing address.

**4. PREMIUM:** *  $   25,881  [X] Flat Charge  [ ] Adjustable (See premium schedule)
  *   SEE END. CG D0 31 10 91

**5. LIMITS OF INSURANCE:**

| COVERAGES | | LIMITS OF LIABILITY |
|---|---|---|
| AGGREGATE LIMITS OF LIABILITY | 25,000,000 | Products/Completed Operations Aggregate |
| | 25,000,000 | General Aggregate |
| COVERAGE A - Bodily Injury and Property Damage Liability | 25,000,000 | any one occurrence subject to the Products/ Completed Operations and the General Aggregate Limits |
| COVERAGE B - Personal and Advertising Injury Liability | 25,000,000 | any one person or organization subject to the General Aggregate Limit of Liability |
| RETAINED LIMIT | 0 | any one occurrence or offense |

**6. SCHEDULE OF UNDERLYING INSURANCE:**

| POLICY | LIMITS (000 omitted) | COVERAGE | COMPANY |
|---|---|---|---|
| SEE ENDORSEMENT CG D0 23 04 96 | | | |

**7.** On the effective date shown in Item 3, the Commercial Excess Liability (Umbrella) Insurance Policy numbered above includes this Declarations Page and the Policy Jacket (Form UM 00 76 which contains the Nuclear Energy Liability Exclusion) and any endorsements listed hereafter
  SEE END. CG D0 30 04 96

**NAME AND ADDRESS OF AGENT OR BROKER:**

MEYER & ECKENRODE INC     F3570
200 THIRD AVE
CARNEGIE              PA 15106

**CG T0 14 04 96**
**OFFICE:** PITTSBURGH              DOWN

**COUNTERSIGNED BY.**

_____
Authorized Representative

DATE _____

Page 1 of 1

**UMBRELLA**

**POLICY NO.:** PSM-CUP-875K962-6-TIL-00
**ISSUE DATE:** 01-05-00

### SCHEDULE OF FORM, ENDORSEMENT & SCHEDULE NUMBERS

This schedule shows the numbers of forms, endorsements and other schedules which form part of the Coverage Part shown below.

**COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE**

SCHEDULE OF NUMBERS

```
IL T3 48 04 97  ADDITIONAL POLICY CONDITIONS - FOREIGN LIABILITY
CG TO 14 04 96  POLICY DECLARATIONS COMMERCIAL EXCESS LIABILITY (UMBRELLA)
CG DO 23 04 96  UNDERLYING POLICIES AND LIMITS ENDORSEMENT
CG DO 30 04 96  SCHEDULE OF FORM, ENDORSEMENT & SCHEDULE NUMBERS
CG DO 31 10 91  PREMIUM SPLIT ENDORSEMENT
UM 00 01 01 86  COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
UM 00 30 01 86  EXCLUSION - REAL AND/OR PERSONAL PROPERTY
UM 00 94 08 86  AMENDMENT OF COVERAGE - NAMED INSURED
UM 00 96 12 86  PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL
UM 01 15 06 88  EXCLUSION - POLLUTION
UM 01 52 11 89  EMPLOYEE BENEFITS LIABILITY
UM 01 81 01 95  EMPLOYMENT - RELATED PRACTICES EXCLUSION
UM 01 88 04 96  AMENDMENT OF PERSONAL INJURY AND ADVERTISING INJURY LIABILITY
UM 01 89 04 96  UNINSURED/UNDERINSURED MOTORISTS AND "AUTO" NO-FAULT EXCLUSION
UM 01 90 01 99  DISCRIMINATION EXCLUSION
UM 01 96 07 96  EXCLUSION - ASBESTOS
UM 02 03 07 96  EXCLUSION - INTERCOMPANY PRODUCTS SUITS
UM 02 12 07 96  EXCLUSION - AIRCRAFT PRODUCTS AND GROUNDING
UM 03 05 03 97  INTERNATIONAL - AMENDMENT OF COVERAGE
UM 03 11 07 97  PREJUDGMENT INTEREST DEFENSE AMENDMENT
UM 03 12 07 97  PERSONAL INJURY - ASSUMED BY CONTRACT
UM 03 13 07 97  FIRE DAMAGE LIABILITY EXTENSION
UM 03 26 03 98  EXCLUSION-YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS
UM 00 76 01 86  NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT(BROAD FORM)
IL 09 10 01 81  PENNSYLVANIA NOTICE
```

**CG D0 30 04 96**

MEYER & ECKENRODE INC          F3579                    PITTSBURGH        170

Page  1 of 1

# COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this insurance the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II—WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V—DEFINITIONS**.

**SECTION I—COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY.**

**1. INSURING AGREEMENT.**

   **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. This insurance applies only to:

     **(1)** "Bodily injury" or "property damage":

       **(a)** Occurring during the policy period; and

       **(b)** Caused by an "occurrence"; and

     **(2)** "Personal injury" or "advertising injury" caused by an "offense" committed during the policy period.

   **b.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

   **c.** "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

   **d.** The amount we will pay for damages is limited as described in **SECTION III—LIMITS OF INSURANCE**.

This insurance applies anywhere in the world.

**2. DEFENSE OF CLAIMS OR SUITS.**

   **a.** We will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If we elect to join in the defense of such claims or "suits," we will pay all expenses we incur.

   **b.** We will have the right and duty to defend any "suit" for damages which are payable under Coverages A or B (including damages wholly or partly within the "retained limit") but which are not payable by a policy of "underlying insurance," or any other available insurance, because:

     **(1)** Such damages are not covered; or

     **(2)** The "underlying insurance" has been exhausted by the payment of claims.

   **c.** We may investigate and settle any claim or "suit" in **b.** above at our discretion.

   **d.** Our right and duty in **b.** above end when we have used up the "applicable limit of insurance" in the payment of judgments or settlements.

   **e.** We will pay, with respect to any claim or "suit" we defend in **b.** above:

     **(1)** All expenses we incur.

     **(2)** The cost of appeal bonds and bonds to release attachments, but only for bond amounts within the "applicable limit of insurance." We do not have to furnish these bonds.

     **(3)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up

UMBRELLA

to $100 a day because of time off from work.

**(4)** All costs taxed against the insured in the "suit."

**(5)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have:

**(a)** paid, or offered to pay; or

**(b)** deposited in court:

the part of the judgment that is within the "applicable limit of insurance."

These payments will not reduce the limits of insurance.

In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico or Canada where we may be prevented by law or otherwise from carrying out this agreement:

**a.** You must arrange to investigate, defend or settle any claim or "suit."

**b.** You will not make any settlement without our consent.

**c.** We will pay expenses incurred with our consent.

**3. EXCLUSIONS.**

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An "offense" committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** "Bodily injury" consisting of humiliation, mental injury or mental anguish directly or indi-

rectly related to the employment of any person or persons by any insured.

**d.** "Bodily injury," "property damage," "personal injury" or "advertising injury" for which the insured assumed liability under a contract or agreement. This exclusion applies only if the damage or injury occurred prior to the effective date of the contract or agreement.

**e.** Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law. This exclusion does not apply to liability you assume under any contract or agreement.

**f.** **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

**(a)** At or from premises you own, rent or occupy;

**(b)** At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

**(d)** At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

**(i)** If the pollutants are brought on or to the site or location in connection with such operations; or

**(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

**(e)** that are or that are contained in any property that is:

**(i)** being transported or towed by, or handled for movement into, onto or from, the covered "auto";

**(ii)** otherwise in the course of transit; or

**(iii)** being stored, disposed of, treated or processed in or upon the covered "auto";

**(f)** before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto the covered "auto"; or

**(g)** after the pollutants or any property in which the pollutants are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

**(2)** Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Paragraphs **(1)(a)** through **(1)(d)** and **(1)(e)(iii)** do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical function of the covered "auto" or its parts, if the pollutants escape or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Paragraphs **(1)(a)** through **(1)(d)** do not apply to pollutants not in or upon the covered "auto" if:

**(1)** the pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of the covered "auto";

**(2)** the discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage; and

**(3)** the "personal injury" or "property damage" is not otherwise excluded under paragraphs **(1)(e)**, **(1)(f)** or **(1)(g)** of this exclusion.

This exclusion does not apply to "bodily injury" to any employee of the insured arising out of and in the course of employment by the insured.

**g.** Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, including loading or unloading, or entrustment to others of watercraft over 50 feet in length or any aircraft:

**(1)** Owned by any insured;

**(2)** Chartered without crew by or on behalf of any insured; or

**(3)** Owned and operated by an employee of any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent; or

**(2)** Liability assumed under any contract or agreement.

**h.** "Personal injury" consisting of discrimination directly or indirectly related to the employment or prospective employment of any person or persons by any insured.

**i.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity; or

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. All "personal injury" or "advertising injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded.

**j.** "Property damage":

**(1)** Property you rent, occupy or which is in your care, custody or control if:

**(a)** You agreed to provide insurance for it; or

**(b)** Such property is owned by a person or organization controlling the insured or is under the control of the insured.

**k.** "Property damage" to "your product" arising out of it or any part of it.

UMBRELLA

**l.** Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **b.** through **n.** do not apply to damage by fire to premises rented to you.

**SECTION II—WHO IS AN INSURED.**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** An organization other than a partnership or joint venture, you are an insured.

**2.** Each of the following is also an insured:

**a.** As respects the "auto hazard":

**(1)** Anyone using an "auto" you own, hire or borrow including any person or organization legally responsible for such use provided it is with your permission; and

**(2)** Any of your executive officers, directors, partners, employees or stockholders, operating an "auto" you do not own, hire or borrow while it is being used in your business.

None of the following is an insured under **(1)** or **(2)** above:

**(a)** Any person employed by or engaged in the duties of an auto sales agency, repair shop, service station, storage garage or public parking place that you do not operate;

**(b)** The owner or lessee of any "auto" hired by or for you or loaned to you, and any agent or employee of such owner or lessee.

**b.** As respects aircraft:

Anyone using an aircraft chartered with crew by you or on your behalf and anyone legally responsible for its use except:

**(1)** The owner or crew of the aircraft or any person operating such aircraft;

**(2)** Any manufacturer of the aircraft or any of its parts;

**(3)** Any sales, service or repair company;

**(4)** Any airport or hangar operator;

or any employee of **(2)**, **(3)** and **(4)**.

**c.** Except as respects aircraft and the "auto hazard":

**(1)** Your executive officers, employees, directors or stockholders while acting within the scope of their duties; and

**(2)** Any person or organization while acting as real estate manager for you.

**d.** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured. However, coverage does not apply to:

**(1)** "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(2)** "Personal injury" or "advertising injury" arising out of an "offense" committed before you acquired or formed the organization.

**e.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**f.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

**g.** Any person or organization for whom you agreed in writing to provide this insurance for operations you perform or facilities you own or use. This insurance is subject to your "applicable underlying limits" for such operations or facilities.

**h.** Any other person or organization insured under any policy of the "underlying insurance." This grant is subject to all the limitations upon coverage under such policy other than the limits of the "underlying insurers" liability.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

No person is an insured as respects "bodily injury" to a fellow employee unless insurance for such liability is afforded by the "underlying insurance".

## SECTION III—LIMITS OF INSURANCE.

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits."

**2.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of injury and damage included in the "products-completed operations hazard."

**3.** The General Aggregate Limit is the most we will pay for damages under Coverage A and Coverage B, except:

**a.** Damages because of injury and damage included in the "products-completed operations hazard"; and

**b.** Damages because of injury and damage included in the "auto hazard".

**4.** Subject to **3.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence".

To determine the limit of our liability, all "bodily injury" and "property damage" arising out of continuous or repeated exposure to the same general conditions shall be considered one "occurrence".

The limits of this insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months. The policy period begins with the effective date shown in the Declarations. If the policy period is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period.

## SECTION IV—CONDITIONS.

**1. APPEALS.**

**a.** If the insured or the insured's "underlying insurer" elects not to appeal a judgment which exceeds the "applicable underlying limit", we may do so.

**b.** If we do, we will pay all costs of the appeal. We will also pay all costs on appeals related to the defense of the insured as provided in **SECTION I, 2.** These sums are in addition to the "applicable limit of insurance". In no event shall our liability for "ultimate net loss" exceed the "applicable limit of insurance."

**2. BANKRUPTCY.**

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this insurance.

UMBRELLA

**3. CANCELLATION.**

   **a.** You may cancel this insurance by mailing or delivering to us advance written notice of cancellation.

   **b.** We may cancel this insurance by mailing or delivering to you written notice of cancellation at least:

     **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

     **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **c.** We will mail or deliver our notice to your last mailing address known to us.

   **d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **e.** If this insurance is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund will be pro rata less 10% of the pro rata unearned premium. The cancellation will be effective even if we have not made or offered a refund.

   **f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**4. CHANGES.**

This contract contains all the agreements between you and us concerning the insurance afforded. No change can be made in the terms of this insurance except with our consent. The terms of this insurance can be amended or waived only by endorsement issued by us and made a part of this insurance.

**5. DUTIES IN THE EVENT OF OCCURRENCE OR OFFENSE, CLAIM OR SUIT.**

   **a.** You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim under this insurance. Notice should include:

     **(1)** How, when and where the "occurrence" or "offense" took place; and

     **(2)** The names and addresses of any injured persons and witnesses.

   **b.** If a claim is made or "suit" is brought against any insured which may result in a claim against this insurance, you must see to it that

we receive prompt written notice of the claim or "suit".

   **c.** The insured must:

     **(1)** Cooperate with the "underlying insurers";

     **(2)** Comply with the terms of the "underlying insurance"; and

     **(3)** Pursue all rights of contribution or indemnity against any person or organization who may be liable to the insured because of "bodily injury," "property damage," "personal injury" or "advertising injury" with respect to which insurance is provided under this or any policy of "underlying insurance."

   **d.** When we believe that a claim may exceed the "underlying insurance", we may join with the insured and the "underlying insurer" in the investigation, settlement and defense of all claims and "suits" in connection with such "occurrence" or "offense." In such event, the insured must cooperate with us.

**6. EXAMINATION OF YOUR BOOKS AND RECORDS.**

We may examine and audit your books and records as they relate to this insurance:

   **a.** At any time during the policy period;

   **b.** Up to three years afterward; or

   **c.** Within one year after final settlement of all claims under this insurance.

**7. INSPECTIONS AND SURVEYS.**

We have the right but are not obligated to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

Copyright, The Travelers Indemnity Company.

UM 00 01 01 86

**8. LEGAL ACTION AGAINST US.**

No person or organization has a right under this insurance:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this insurance unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial. We will not be liable for damages that:

**a.** Are not payable under the terms of this insurance; or

**b.** Are in excess of the "applicable limit of insurance".

An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**9. MAINTENANCE OF UNDERLYING INSURANCE.**

The insurance afforded by each policy in the schedule of "underlying insurance" in the Declarations will be maintained for the full term of this insurance. This provision does not apply to the reduction of the aggregate limit or limits due to payment of claims for "bodily injury," or "personal injury," "property damage" or "advertising injury." As these policies expire, you will renew them at limits at least equal to the expiring limits of insurance.

If you fail to comply with the above, this insurance is not invalidated. However, in the event of a loss, we will pay only to the extent that we would have paid had you so complied.

You must give us a written notice of any change in the "underlying insurance" as respects:

**a.** Coverage;

**b.** Limits of insurance;

**c.** Termination of any coverage; or

**d.** Exhaustion of aggregate limits.

**10. OTHER INSURANCE.**

This insurance is excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise. This provision does not apply to a policy bought specifically to apply in excess of this insurance.

**11. OUR RIGHT TO RECOVER FROM OTHERS.**

If we make a payment under this insurance, the insured will assist us and the "underlying insurer" in recovering what we paid by using the insured's rights of recovery. Reimbursement will be made in the following order:

**a.** First, to any interest (including the insured) who has paid any amount in excess of the limits of this insurance;

**b.** Next to us; and

**c.** Then to any interest (including the insured and the "underlying insurer") as are entitled to claim the remainder, if any.

A different order may apply if agreed upon by all interests. Expenses incurred in the process of recovery will be divided among all interests according to the ratio of their respective recoveries.

**12. PREMIUM.**

**a.** You are responsible for the payment of all premiums and will be the payee for any return premiums.

**b.** If the premium is a flat charge, it is not subject to adjustment except as provided in **d.** below.

**c.** If the premium is other than a flat charge, it is an advance premium only. The earned premium will be computed at the end of each year in which this insurance is in force at the rate shown in the Declarations, subject to the Minimum Annual Premium.

**d.** Additional premium may become payable when coverage is provided for additional insureds and named insureds under the provisions of **SECTION II—2.d.**, **g.** and **h.**

**13. PREMIUM AUDIT.**

**a.** You must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**b.** At the close of each audit period we will compute the earned premium for that period.

**c.** Audit premiums are due and payable on notice to you.

**d.** If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to you subject to the minimum premiums.

UMBRELLA

**14. REPRESENTATION.**

By accepting this insurance, you agree:

**a.** The statements in the Declarations and any subsequent notice relating to "underlying insurance" are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this insurance in reliance upon your representations.

**15. SEPARATION OF INSUREDS.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to you in this insurance, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**16. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS INSURANCE.**

Your rights and duties under this insurance may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**17. WHEN LOSS IS PAYABLE.**

If we are liable under this insurance, we will pay for "ultimate net loss" after:

**a. (1)** The insured's liability is established by court decision; or

**(2)** There is a written agreement between the claimant, the insured, any "underlying insurer" and us; and

**b.** The amount of the "applicable underlying limit" is paid by or on behalf of the insured.

We will pay all claims within thirty days provided all terms of this insurance are met.

The insured will reimburse us for any payment we make for damages which are within the "retained limit".

**SECTION V—DEFINITIONS.**

**1.** "Advertising injury" means injury arising out of one or more of the following "offenses":

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

Such "offenses" must be committed in the course of advertising your goods or products.

**2.** "Applicable limit of insurance" means the maximum amount we will pay as damages in accordance with **SECTION III—LIMITS OF INSURANCE.**

**3.** "Applicable underlying limit" means:

**a.** If the policies of "underlying insurance" apply to the "occurrence" or "offense," the greater of:

**(1)** The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or

**(2)** The "retained limit" shown in the Declarations; or

**b.** If the policies of "underlying insurance" do not apply to the "occurrence" or "offense", the amount stated in the Declarations as the "retained limit."

The limits of insurance in any policy of "underlying insurance" will apply even if:

**a.** The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

**b.** The "underlying insurer" becomes bankrupt or insolvent.

**4.** "Auto" means a land motor vehicle, trailer or semi-trailer.

**5.** "Auto hazard" means all "bodily injury" and "property damage" for which liability insurance is afforded under the terms, other than limits of insurance, of the auto policy of "underlying insurance."

Copyright, The Travelers Indemnity Company.

**UM 00 01 01 86**

6. "Bodily injury" means bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

7. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

9. "Offense" means any of the offenses listed in the definition of "personal injury" or "advertising injury."

10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication of material that violates a person's right of privacy; or

    f. Discrimination because of race, religion, age, sex or physical disability. This does not apply:

       (1) To "offenses" committed by or at the direction of the insured; or

       (2) If insurance for such "offenses" is prohibited by law.

    Such "offenses" must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

11. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

       (1) Products that are still in your physical possession; or

       (2) Work that has not yet been completed or abandoned.

    b. "Your work" will be deemed completed at the earliest of the following times:

       (1) When all of the work called for in your contract has been completed.

       (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

       (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

12. "Property damage" means physical injury to tangible property, including all resulting loss of use of that property.

13. "Retained limit" is the sum stated in the Declarations as such. If the policies of "underlying insurance" do not apply to the "occurrence" or "offense", the insured shall retain this amount as self insurance with respect to:

    a. "Bodily injury" or "property damage" caused by each "occurrence"; or

    b. "Personal injury" or "advertising injury" sustained by any one person or organization and caused by an "offense."

14. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

15. "Ultimate net loss" means the sum actually paid or payable due to a claim for which the insured is liable either by a settlement to which we agreed or

UMBRELLA

a final judgment. Such sum will include proper adjustments for recoveries and salvage.

16. "Underlying insurance" means the policies listed in the Schedule of Underlying Insurance and includes:

   **a.** Any renewal or replacement of such policies; and

   **b.** Any other insurance available to the insured.

17. "Underlying insurer" means any insurer which provides a policy listed in the Schedule of Underlying Insurance or any other insurance available to the insured.

18. "Your product" means:

   **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(1)** You;

   **(2)** Others trading under your name; or

   **(3)** A person or organization whose business or assets you have acquired; and

   **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in **a.** and **b.** above.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

   **a.** Work or operations performed by you or on your behalf; and

   **b.** Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in **a.** or **b.** above.

Copyright, The Travelers Indemnity Company.

**UM 00 01 01 86**

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

1. The insurance does not apply:

   **a.** Under any Liability Coverage, to "bodily injury" or "property damage":

      **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **b.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **c.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      **(1)** The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time pos-

sessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material";

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

   "Nuclear facility" means:

   **a.** Any "nuclear reactor";

   **b.** Any equipment or device designed or used for (1) separating the isotopes of uranium or pluto-

UMBRELLA

nium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, The Travelers Indemnity Company
**UM 00 76 01 86**

# ADDITIONAL POLICY CONDITIONS
# FOREIGN LIABILITY

All Coverage Parts included in this policy are subject to the following additional conditions:

## A. TITLES OF PARAGRAPHS

The titles of paragraphs of this policy and any endorsements attached to this policy are inserted solely for convenience of reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

## B. CURRENCY PROVISION

We will pay any loss in United States dollars. At our sole option, we may also pay loss under this policy in any currency if you request us to do so.

## C. NUCLEAR LIABILITY

This insurance does not apply:

**(1)** To "bodily injury" or "property damage":

    **a.** With respect to which an insured under this insurance is also an insured under a nuclear energy liability policy or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the U.S. Atomic Energy Act of 1954, or any law amendatory thereof or (ii) the insured is, or had this insurance not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization;

**(2)** Under any Medical Payments coverage, or under any provision relating to first aid, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization;

**(3)** To "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

    **a.** The "nuclear material is at any "nuclear facility" owned by, or operated by or on behalf of an insured or has been discharged or dispersed therefrom;

    **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    **c.** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility."

As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of

TRAVELERS DOC MGMT Page 16 of 40

"special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, The Travelers Indemnity Company, 1997
**IL T3 48 04 97**

UMBRELLA

POLICY NUMBER: PSM-CUP-875K962-6-TIL-00          ISSUE DATE: 01-05-00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# SCHEDULE OF UNDERLYING INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE**

Item 6 of the Declarations to include:

| POLICY | LIMITS (000 OMITTED) | COVERAGE | COMPANY |
|---|---|---|---|
| 630-875K9602-00 | 1,000 EACH OCCURRENCE<br>1,000 EACH PERSON OR ORG<br>2,000 PROD/COMP OPS AGG<br>2,000 GENERAL AGGREGATE | CGL | TIL |
| 810-875K9614-00 | 1,000 CSL | BAP | TIL |
| UB-874K2773-00 | 100 PER ACCIDENT<br>500 POLICY LIMIT FOR DISEASE<br>100 PER EMPLOYEE (DISEASE) | EMPLOYERS LIABILITY | TIL |
| 7317-09-07 | 100 EACH ACCIDENT<br>500 AGGREGATE EMPLOYEE DISEASE<br>100 EACH EMPLOYEE DISEASE | FOREIGN LIABILITY | FEDERAL<br>INS. CO |
| PC-659K5331-99 | 1,000 EACH ACCIDENT | WORLD COVER AUTO | IND |
| PC-G59K5331-99 | 1,000 EACH OCCURRENCE<br>1,000 EACH PERSON OR ORG<br>2,000 PROD/COMP OPS AGG.<br>2,000 GENERAL AGGREGATE | WORLD COVER<br>FOREIGN - GL | IND |
| PC-659K5331-99 | 500 EACH ACCIDENT<br>500 EACH AGG.<br>500 EACH EMPLOYEE DISEASE | WORLD EMPLOYERS<br>LIAB. | IND |

PRODUCER: MEYER & ECKENRODE INC                    OFFICE: PITTSBURGH                170
CG D0 23 04 96                                                        Page  1 of 1

UMBRELLA
ISSUE DATE: 01-05-00

POLICY NUMBER: PSM-CUP-875K962-6-TIL-00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION—REAL AND/OR PERSONAL PROPERTY

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This endorsement modifies the insurance provided for the following property:

(Check the appropriate block(s))

- [X] Real property
- [X] Personal property

As respects the type(s) of property checked above, this insurance does not apply to "property damage" to:

1. property you own, rent, or occupy;

2. property loaned to you; or

3. property in your care, custody, or control.

Parts 2. and 3. above do not apply to liability assumed under a sidetrack agreement.



**UM 00 30 01 86**          Copyright, The Travelers Indemnity Company.          Page 1 of 1

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE — NAMED INSURED

This endorsement modifies insurance provided under the following:

    COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

The second paragraph of this insurance is replaced by:

Throughout this insurance the words "you" and "your" refer to the Named Insured shown in the Declarations and any subsidiary thereof. The words "we", "us" and "our" refer to the Company providing this insurance.

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES —CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**A.** SECTION IV CONDITIONS, Part 3., CANCELLATION is replaced by the following:

**3.** **CANCELLATION**

   **a.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

   **b.** CANCELLATION OF POLICIES IN EFFECT FOR LESS THAN 60 DAYS

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

   **c.** CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    **(1)** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

    **(2)** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

    **(3)** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    **(4)** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    **(5)** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    **(6)** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us.

   **d.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

   **e.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **f.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured

**UM 00 96 12 86**          Copyright, The Travelers Indemnity Company          Page 1 of 2

UMBRELLA

cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**g.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** SECTION IV, CONDITIONS is amended by adding the following:

**18.** WHEN WE DO NOT RENEW

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**19.** INCREASE OF PREMIUM AT RENEWAL

If we increase your renewal premium, we will mail or deliver to the first Named Insured:

**a.** Written notice of our intent to increase the premium at least 60 days before the effective date of the premium increase; and

**b.** An estimate of the increase at least 30 days before the effective date of premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice of mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

Copyright, The Travelers Indemnity Company

**UM 00 96 12 86**

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

Exclusion f. is replaced by the following:

f.   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, or any loss, cost, expense or damages resulting therefrom, but this exclusion does not apply to "bodily injury" or "property damage" to which any policy listed in the schedule of underlying insurance, or any renewal or replacement thereof, applies or would apply but for the exhaustion of its limits of liability.

"Pollutants" means one or more solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**UM 01 15 06 88**          Copyright, The Travelers Indemnity Company          Page 1 of 1

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

1. This insurance applies to damages due to any negligent act, error or omission by you or any person for whose acts you are legally responsible in the management of public employee benefits or private employee benefits, but, only if you have a policy of "underlying insurance" which would have provided coverage for such damages but for the exhaustion of the limits of liability therefor.

2. With respect to the insurance provided in **1.** above, **SECTION III—LIMITS OF INSURANCE** is amended as follows:

   **a.** Subject to all of the provisions of **SECTION III—LIMITS OF INSURANCE** of the Umbrella policy, the following also applies:

   **(1)** As respects the insurance provided by this endorsement, the Limit of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **(a)** Insureds; or

   **(b)** claims made or "suits" brought.

**(2)** The General Aggregate Limit shown in the Umbrella policy Declarations also applies to this insurance and is the most we will pay for all damages:

   **(a)** under this insurance and Coverage A and Coverage B, except:

   **(i)** damages because of injury and damage included in the "products-completed operations hazard"; and

   **(ii)** damages because of injury and damage included in the "auto hazard."

   **(b)** due to all negligent acts, errors or omissions.

**(3)** Subject to **(2)** above the any one occurrence limit shown in the Umbrella policy Declarations is the most we will pay for all damages to any one employee including dependents and beneficiaries.

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT—RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**A.** SECTION I, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, EXCLUSION **3.c.** is replaced by the following:

    **c.** "Bodily injury" arising out of:

        **(1)** Humiliation, mental injury or mental anguish directly or indirectly related to the employment of any person or persons by any insured;

        **(2)** Refusal to employ;

        **(3)** Termination of employment;

        **(4)** Coercion, demotion, evaluation, reassignment, discipline, defamation or other employment-related practices, policies, acts, or omissions; or

        **(5)** Consequential "bodily injury" as a result of **(1)** through **(4)** above.

    This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**B.** SECTION I, COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY, EXCLUSION **3.h.** is replaced by the following:

    **h.** "Personal injury" arising out of:

        **(1)** Discrimination directly or indirectly related to the employment or prospective employment of any person or persons by any insured;

        **(2)** Refusal to employ;

        **(3)** Termination of employment;

        **(4)** Coercion, demotion, evaluation, reassignment, discipline, defamation or other employment-related practices, policies, acts, or omissions; or

        **(5)** Consequential "bodily injury" as a result of **(1)** through **(4)** above.

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

SECTION I – COVERAGES, Part **3.i.** of **EXCLUSIONS** is replaced by the following:

i.  "Personal injury" or "advertising injury":

   **(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   **(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. All "personal injury" or "advertising injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded;

   **(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

   **(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNINSURED/UNDERINSURED MOTORISTS AND "AUTO" NO-FAULT EXCLUSION

This endorsement modifies insurance provided under the following:

> COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to any liability imposed on the insured, or the insured's insurer, under any of the following laws:

**(1)** Uninsured Motorists;

**(2)** Underinsured Motorists; or

**(3)** "Auto" No-Fault law.

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**PROVISIONS**

1. Paragraph f. of the definition of "personal injury" is deleted.

2. **SECTION I — COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY** is amended by adding the following additional exclusion:

(This insurance does not apply to:)

"Bodily injury" or "personal injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

**UM 01 90 01 99**          Copyright, Travelers Indemnity Company, 1996          Page 1 of 1

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — ASBESTOS

This endorsement modifies insurance provided under the following:

   COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

**a.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

**b.** Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

    COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—AIRCRAFT PRODUCTS AND GROUNDING

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard" and arising out of any "aircraft product" or the "grounding" of any aircraft.

"Aircraft product" means:

1. Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith); and

2. Any article furnished by the insured and installed in an aircraft or used in connection with an aircraft, or for spare parts for an aircraft, including ground handling tools and equipment; and

3. Any of "your products" used at an airport for the purpose of guidance, navigation or direction of aircraft; and

4. Training aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.

"Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof sold, handled or distributed by the insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders, or drawings of the insured or with tools, machinery or other equipment furnished to such persons or organizations by the insured, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

UMBRELLA

POLICY NUMBER: PSM-CUP-875K962-6-TIL-00          ISSUE DATE: 01-05-00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INTERNATIONAL—AMENDMENT OF COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY; is amended as follows:**

**A.** This insurance applies to "bodily injury", "property damage", "personal injury" or "advertising injury" which occurs in:

    **1.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **2.** International waters or airspace, provided the injury or damage occurs in the course of travel or transportation between states, countries or nations included within the territory described in this endorsement.

    (The following apply only if indicated by an "x")

☐ **3.** The following countries:

This insurance applies to "bodily injury", "property damage", "personal injury" or "advertising injury" anywhere else in the world if the injury or damage arising out of the activities of a person whose home is in the territory described in **A.1.** or **A.3.**, but is away for a short time on your business.

☐ **4.** All other parts of the world excluding those countries which are currently under a trade embargo as set forth in Foreign Assets Control Regulations promulgated by the U.S. Treasury Department's Office of Foreign Assets Control, and also excluding

**B.** With respect to claims or suits caused by an occurrence within the territory described in **A.3.** or **A.4.** above, the following conditions apply.

    **1.** This insurance is not a substitute for "compulsory admitted insurance" in any jurisdiction described in **A.3.** or **A.4.** above, whether or not this insurance would qualify as "compulsory admitted insurance" in a given jurisdiction or is accepted by the appropriate authorities as proof of "compulsory admitted insurance".

You agree to maintain "compulsory admitted insurance" at the limits required by law. Your failure to do so will not invalidate the coverage afforded by this endorsement, but we will only be liable to the same extent that we would have been liable had you maintained "compulsory admitted insurance".

**UM 03 05 03 97**          Copyright, The Travelers Indemnity Company, 1997          Page 1 of 2

UMBRELLA

2. In any jurisdiction where we may be prevented by law or otherwise from paying settlements on behalf of you or investigating or defending suits brought against you, the following will apply:

a. The provision of this insuring agreement reading. "..will pay on behalf of the insured... " in Part 1. of **SECTION I, COVERAGES**, is amended to read "... will indemnify the insured...";

b. You must arrange to investigate, defend or settle any claim or "suit ";

c. You will not make any settlement without our consent;

d. We will pay expenses incurred with our consent.

(In addition to **B.1.** and **B.2.** above, the following will also apply if indicated by an "X")

☐ 4. With respect to claims or "suits" brought outside the United States of America (including its territories and possessions), Puerto Rico and Canada:

a. The provision of this insuring agreement reading."..will pay on behalf of the insured... " in Part 1. of **SECTION I, COVERAGES**, is amended to read "...will indemnify the insured... ";

b. You must arrange to investigate, defend or settle any claim or "suit ";

c. You will not make any settlement without our consent;

d. We will pay expenses incurred with our consent;

e. We may, at our discretion, participate in the defense or settlement of any such claim or "suit".

(The following apply only if indicated by an "x")

☐ C. With respect to "bodily injury", "property damage", "personal injury" or "advertising injury" which occurs outside of the territory described in **A.1.** or **A.2.** above this insurance applies only if a policy of "underlying insurance" shown in the Declarations applies to such "bodily injury", "property damage", "personal injury" or "advertising injury".

☐ D. With respect to "bodily injury", "property damage", "personal injury" or "advertising injury" which occurs outside of the territory described in **A.1.** or **A.2.** above, the "retained limit" in the Declarations is amended to $
any one "occurrence" or "offense" "bodily injury", "property damage", "personal injury" or "advertising injury" combined.

E. Only as respects the insurance provided by this endorsement, the following is added to the **DEFINITIONS** Section:

"Compulsory admitted insurance" means insurance that is:

a. Required to be in-force to satisfy the legal requirements of a given jurisdiction; and

b. Issued by a State Fund or an insurer licensed or permitted by law to do business in the jurisdiction where the property or exposure to loss is located.

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREJUDGMENT INTEREST
# DEFENSE AMENDMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**SECTION I – COVERAGES,** Part **2. DEFENSE OF CLAIMS OR SUITS** is amended by adding the following to paragraph **e.**:

(6)   Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the "applicable limit of insurance", we will not pay any prejudgment interest based on that period of time after the offer.

TRAVELERS DOC MGMT Page 34 of 40

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL INJURY—ASSUMED BY CONTRACT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**SECTION I – COVERAGES**, Part **3.i.** of **EXCLUSIONS** is replaced by the following:

**i.** **(a)** "Personal injury":

  **(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

  **(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. All "personal injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded;

  **(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

  or

**(b)** "Advertising injury":

  **(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

  **(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. All "personal injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded;

  **(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

  **(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

 Copyright, The Travelers Indemnity Company, 1997

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FIRE DAMAGE LIABILITY EXTENSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

1. The last paragraph of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY;** and **COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY (Section I – Coverages)** is deleted and replaced by the following:

   Exclusions **b.** through **n.** do not apply to damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

   **a.** Fire;

   **b.** Explosion;

   **c.** Lightning;

   **d.** Smoke resulting from such fire, explosion, or lightning; or

   **e.** Water.

2. The insurance provided in **1.** above does not apply to damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

   **a.** Rupture, bursting, or operation of pressure relief devices;

   **b.** Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water;

   **c.** Explosion of steam boilers, steam pipes, steam engines, or steam turbines.

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS— "PRODUCTS-COMPLETED OPERATIONS HAZARD"

This endorsement modifies insurance under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

The following exclusion is added to Paragraph 3., EXCLUSIONS of SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

**3.** Exclusions

This insurance does not apply to "bodily injury" or "property damage" within the "products-completed operations hazard" arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** Any of the following, whether belonging to any insured or to others:

**(a)** Computer hardware, including microprocessors;

**(b)** Computer application software;

**(c)** Computer operating systems and related software;

**(d)** Computer networks;

**(e)** Microprocessors (computer chips) not part of any computer system; or

**(f)** Any other computerized or electronic equipment or components; or

**(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 3.a.(1) of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 3.a. of this endorsement.

TRAVELERS DOC MGMT Page 37 of 40

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;
2. Consultation or advice; or
3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. to consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. if any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

**IL 09 10 01 81**          Copyright, Insurance Services Office, Inc., 1981          Page 1 of 1

RECORDS RETENTION

One Tower Square, Hartford, Connecticut 06183

 **Travelers**Property Casualty
A Member of TravelersGroup

**CHANGE ENDORSEMENT**

|  |  |
|---|---|
| **Named Insured:** | WASHINGTON PENN PLASTICS CO. AND AUDIA LAND OMPANY |
| **Policy Number:** | PSM-CUP-875K962-6-TIL-00 |
| **Policy Effective Date:** | 01-01-00 |
| **Policy Expiration Date:** | 01-01-01 |
| **Issue Date:** | 04-21-00 |
| **Premium $** | NIL |

Effective from 01-01-00 at the time of day the policy becomes effective.

THIS INSURANCE IS AMENDED AS FOLLOWS:

UNDERLYING POLICIES AND LIMITS ARE CHANGED AS FOLLOW:

| POLICY | LIMITS (000 OMITTED) | COVERAGE | COMPANY |
|---|---|---|---|
| 630-875K962-00 | 1,000 EACH OCCURRENCE<br>1,000 EACH PERSON OR ORG<br>2,000 PROD/COMP OPS AGG<br>2,000 GENERAL AGGREGATE | CGL | TIL |
| 810-875K9614-00 | 1,000 CSL | BAP | TIL |
| UB-874K2773-00 | 100 PER ACCIDENT<br>500 POLICY LIMIT FOR DISEASE<br>100 PER EMPLOYEE (DISEASE) | EMPLOYERS LIABILITY | TIL |
| 7973-65-02 | 100 EACH ACCIDENT<br>500 AGGREGATE EMPLOYEE DISEASE<br>100 EACH EMPLOYEE DISEASE | FOREIGN LIABILITY | FEDERAL INS. CO |
| 7323-65-63 | 1,000 EACH ACCIDENT | WORLD COVER AUTO | GREAT NORTHERN |
| 7323-65-63 | 1,000 EACH OCCURRENCE<br>1,000 EACH PERSON OR ORG<br>2,000 PROD/COMP OPS AGG.<br>2,000 GENERAL AGGREGATE | WORLD COVER FOREIGN - GL | GREAT NORTHERN |
| 7323-65-63 | 500 EACH ACCIDENT<br>500 EACH AGG.<br>500 EACH EMPLOYEE DISEASE | WORLD EMPLOYERS LIAB. | GREAT NORTHERN |



NAME AND ADDRESS OF AGENT OR BROKER

Countersigned by

MEYER & ECKENRODE INC     F3579
200 THIRD AVE
CARNEGIE                  PA  15106

_____
Authorized Representative

DATE: _____

**IL T0 07 09 87** (Page 1 of 1)

Office: PITTSBURGH

RECORDS RETENTION

 Travelers Property Casualty
A Member of Travelers Group

One Tower Square, Hartford, Connecticut  06183

**CHANGE ENDORSEMENT**

|  |  |
|---|---|
| **Named Insured:** | WASHINGTON PENN PLASTICS CO. AND AUDIA LAND COMPANY |
| **Policy Number:** | PSM-CUP-875K962-6-TIL-00 |
| **Policy Effective Date:** | 01-01-00 |
| **Policy Expiration Date:** | 01-01-01 |
| **Issue Date:** | 05-17-00 |
| **Premium $** | NIL |

Effective from 01-01-00 at the time of day the policy becomes effective.

THIS INSURANCE IS AMENDED AS FOLLOWS:

UNDERLYING POLICIES AND LIMITS ARE CHANGED AS FOLLOW:

| POLICY | LIMITS (000 OMITTED) | COVERAGE | COMPANY |
|---|---|---|---|
| 630-875K9602-00 | 1,000 EACH OCCURRENCE<br>1,000 EACH PERSON OR ORG<br>2,000 PROD/COMP OPS AGG<br>2,000 GENERAL AGGREGATE | CGL | TIL |
| 810-875K9614-00 | 1,000 CSL | BAP | TIL |
| UB-874K2773-00 | 100 PER ACCIDENT<br>500 POLICY LIMIT FOR DISEASE<br>100 PER EMPLOYEE (DISEASE) | EMPLOYERS LIABILITY | PHX |
| 7973-65-02 | 100 EACH ACCIDENT<br>500 AGGREGATE EMPLOYEE DISEASE<br>100 EACH EMPLOYEE DISEASE | FOREIGN LIABILITY | FEDERAL INS. CO |
| 7323-65-63 | 1,000 EACH ACCIDENT | WORLD COVER AUTO | GREAT NORTHERN |
| 7323-65-63 | 1,000 EACH OCCURRENCE<br>1,000 EACH PERSON OR ORG<br>2,000 PROD/COMP OPS AGG.<br>2,000 GENERAL AGGREGATE | WORLD COVER<br>FOREIGN - GL | GREAT NORTHERN |
| 7323-65-63 | 500 EACH ACCIDENT<br>500 EACH AGG.<br>500 EACH EMPLOYEE DISEASE | WORLD EMPLOYERS<br>LIAB. | GREAT NORTHERN |

NAME AND ADDRESS OF AGENT OR BROKER

Countersigned by

MEYER & ECKENRODE INC        F3579
200 THIRD AVE
CARNEGIE                    PA  15106

_____
Authorized Representative

DATE: _____

**IL T0 07 09 87  (Page  1 of  1)**

Office  PITTSBURGH